UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY TYSON,

    Plaintiff,

v.                                      Case No. 06-14465

UNITED STATES.[1]

    Defendant.
                             /

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Pending before the court is Defendant's motion to dismiss. Having reviewed the motion and supporting briefs, the court concludes that a hearing is not necessary. E.D. Mich. LR 7.1(e)(2). For the reasons stated below, Defendant's motion will be granted.

**I. BACKGROUND**

Plaintiff Gary Tyson's complaint alleges medical malpractice under the Federal Tort Claims Act, 28 U.S.C. § 1291 ("FTCA"). (Compl. at ¶1.) Plaintiff claims that he suffered certain damages due to Defendant's failure to properly diagnose the injury to his left ankle and foot when it allegedly misread his August 12, 2004 x-ray as showing no fracture. (*Id.* at ¶¶5-12.) The fracture was discovered in a subsequent visit on October 8, 2004. (Pl.'s Resp. at 10.) The remaining relevant facts concern the relationship between Defendant and the doctor who allegedly failed to properly diagnose Plaintiff. The court will recite and analyze those facts below. Defendant

---

[1]Because, as explained below, the United States is the only proper defendant in this action, the court amends the case caption to replace Department of Veterans Affairs ("VA") with the United States.

argues that the doctor was not its employee and that the claim should be dismissed because under the circumstances there is no waiver of sovereign immunity under the FTCA. Plaintiff responds that dismissal is not proper because 1) Defendant has made a judicial admission that establishes that it is the appropriate Defendant, 2) the doctor was an employee of Defendant, 3) Defendant had a non-delegable duty and 4) Defendant should be equitably estopped from seeking dismissal.

## II. STANDARD

Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction usually appear in two forms: facial and factual. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The former attack subject matter jurisdiction as alleged by the complaint and question the sufficiency of the pleading. *Id.* In reviewing such a facial attack, a trial court takes the allegations in the complaint as true. *Id.* For factual attacks, as here, no presumptive truthfulness applies to the factual allegations. *Id.* "When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Id.* In reviewing such motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.* (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977)).

## III.  DISCUSSION

Under the FTCA, the United States codified a limited waiver of its sovereign immunity, creating potential liability for the negligence of employees of government agencies "in the same manner and to the same extent as a private individual under like circumstances . . . ."  28 U.S.C. § 2674.  The waiver encompasses the official conduct of "employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, with or without compensation."  *Id.* at § 2671.  A federal agency "does not include any contractor within the United States."  *Id.*  Because "the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception."  *United States v. Orleans*, 425 U.S. 807, 814 (1976).  Courts must narrowly construe waivers of sovereign immunity in favor of the sovereign and resolve any ambiguities in its favor.  *Rutten v. U.S.*, 299 F.3d 993, 995 (8th Cir. 2002) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992)).

### A.  Plaintiff's "Judicial Admission" Argument Is Not Persuasive

As a general matter, a defendant may not waive the longstanding requirement that federal district courts must have subject matter jurisdiction over a plaintiff's claim.  *See e.g. United States v. Titterington*, 374 F.3d 453, 459 (6th Cir. 2004); *see also Pennoyer v. Neff*, 95 U.S. 714 (1877) (holding that due process requires federal courts to act only with proper jurisdiction).  As such, Plaintiff's first argument is unavailing.  Defendant cannot, as a matter of law, establish federal jurisdiction for Plaintiff's claim by making a judicial admission.  Further, the alleged admission is Defendant's second

3

affirmative defense, which appears below in its entirety:

> The Department of Veterans Affairs and Veterans Administration Medical Center, Ann Arbor, Michigan, should be dismissed as parties because under the Federal Tort Claims Act, the United States is the sole proper defendant. 28 U.S.C. § 1346(b).

(Def.'s Ans. at 2.) This alleged admission is simply an accurate statement of law, namely, that only the United States may be the defendant in a FTCA action. The affirmative defense admits nothing else, including whether the doctor was an employee of the United States.

 **B. The Control Test Fails to Establish that the Government Employed the Doctor**

The core issue is whether the facts before the court establish that Dr. Farhad Ebrahim was an employee of the United States. Applying the "control test," the court concludes that he was not. The critical inquiry in distinguishing a federal employee from an independent contractor is the power of the federal government "to control the detailed physical performance of the contractor." *Logue v. United States*, 412 U.S. 521, 528 (1973).

According to the contract between Defendant and the radiology department of the University of Michigan ("U of M"), the latter was paid to provide 1,040 annual hours of "Bone Specialty Radiology," which consisted of twenty weekly personnel hours. (Contract at 1-2, Def.'s Mot. Br. Ex. 1, 6.) Radiologist services were provided every weekday morning for four hours. (*Id.* at 9.) The contract further states that U of M is the contractor and that "[t]he parties agree that such personnel shall not be considered VA employees for any purpose and shall be considered employees of the contractor." (*Id.*) U of M, further, is responsible for the doctors' worker's compensation, liability

4

insurance, health examinations, income tax withholding and social security payments. (*Id.*)

Ebrahim stated in his deposition that he was employed as a faculty member of U of M's radiology department. (Ebrahim Dep. at 11, Def.'s Mot. Br. Ex. 3.) He spent about one morning per week at the VA hospital. (*Id.* at 12.) He received his salary from U of M. (*Id.* at 13*.*) According to the chief radiologist of the Ann Arbor VA, Ebrahim was never a paid staff radiologist of the VA. (Pernicano Declaration at ¶ 9, Def.'s Reply. Br. Ex. 1.) The chief claims that no VA policies controlled the work that Ebrahim did at the VA. (*Id.* at ¶¶ 10-14.) Ebrahim averred that he knew as a general matter that the VA had radiology policies that in certain specifics might have differed from those of U of M, but did not recall if they were written and had no recollection of ever receiving any kind of policy manual from the VA. (Ebrahim Dep. at 21-22, Def.'s Reply Br. Ex. 2.) He was never required to attend, nor did he attend, any meetings at the VA. (*Id.* at 22.) He considered his time at the VA as optional as far as U of M was concerned, and that his supervisor at U of M asked him and his colleagues "if we all [were] happy to provide the service at the VA to help out, and we all supported that." (*Id.* at 23-24.)

The parties do not contest these facts. Rather, they dispute how to characterize them and what legal effect they have for the issue at hand. The court concludes, under the circumstances, that Defendant exercised little or no control over Ebrahim and that he was therefore not an employee of Defendant. The contract with Defendant expressly states that U of M doctors are not VA employees. *See Lurch v. United States*, 719 F.2d 333, 338 (10th Cir. 1983) (holding that contract between VA and University of New Mexico did not contemplate neurosurgeon would be federal employee); *In re Estate of*

*Kout v. United States*, 241 F. Supp. 2d 1183, 1189 (D. Kan. 2002) (holding that, absent countervailing facts, contractual language is determinative of independent contractor status). Ebrahim spent only four hours a week on Defendant's premises, with virtually all of the formalities of employment - from salary and tax arrangements to insurance coverage - exclusively between Ebrahim and U of M. *See contra Costa v. United States*, 845 F. Supp 64, 68 (D. R.I. 1994) (holding that doctor who received pay from VA and arranged his own taxes but otherwise was under the control of the VA was a federal employee). The record does not indicate that Ebrahim maintained an office or other permanent presence at the VA. *See contra Gamble v. United States*, 648 F. Supp. 438, 441 (N.D. Ohio 1986) (denying sovereign immunity where the doctor held himself out as the VA chief of anesthesiology and maintained his office at the VA surgery department); *see also Rutten*, 299 F.3d 993 (physician who allegedly misread chest x-ray was independent contractor).

The VA policies upon which Plaintiff relies are unavailing. The bulk of the policies address general administrative matters, from computer usage to sexual harassment. (Pl.'s Resp. Exs. 5-9.) The court finds that these policies in no meaningful way restricted the manner in which Ebrahim performed his service reading and interpreting x-rays at the VA. Further, even if the policies on their face could have that effect, the undisputed testimony before the court demonstrates that Defendant's course of conduct evinced no enforcement - or even promulgation - of such policies. The court reaches this conclusion mindful of case law stating that, in the end, doctors must exercise independent medical judgment and thus, strictly speaking, never have an employer who controls the detailed physical performance of their duties. *See e.g.*

*Lurch*, 719 F.2d at 337.  In sum, the court finds that Ebrahim was an independent contractor and not a federal employee.

### C.  Plaintiff's Non-Delegable Duty Argument Is Unavailing

Plaintiff argues that, regardless of Ebrahim's status as a federal employee or independent contractor, Defendant had a non-delegable duty to provide certain services to Plaintiff and that Defendant can be held liable for breaching that duty.  (Pl.'s Resp. at 25-26.)  The court first observes that this argument is virtually barren of support found in binding or even persuasive authority.  Indeed, acceptance of Plaintiff's argument would eviscerate the independent contractor exception and the holding of *Logue*, which considered and rejected an argument expressed in terms of a non-delegable duty that the government allegedly owed to a prisoner.  412 U.S. at 528 n.7.  Accordingly, Plaintiff may not skirt the control test by claiming that Defendant owed him a non-delegable duty.

### D.  Defendant Is Not Estopped from Asserting Lack of Subject Matter Jurisdiction

Finally, the court will reject Plaintiff's argument that certain representations by Defendant should have the effect of estopping it from asserting the affirmative defense of lack of subject matter jurisdiction.  The sum and substance of Plaintiff's argument rests on a single line of a VA web site claiming that all of its physicians "hold joint faculty appointments" at U of M.  (VA Web Site Printout, Pl.'s Resp. Ex. 3.)  Plaintiff claims that he relied to his detriment upon this sole representation and that he otherwise would have filed in state court before the statute of limitations had run.  (Pl.'s Resp. at 28.)  Whatever Plaintiff's reliance and detriment was, he acknowledges that estoppel requires

7

affirmative misconduct by Defendant.  *INS v. Miranda*, 459 U.S. 14 (1982); *Gmable*, 648 F. Supp. 438; *Utterback v. United States*, 668 F. Supp. 602 (W.D. Ky. 1987).

The record falls far short of demonstrating that Defendant committed affirmative misconduct.  Simple logic dictates that the statement that all VA doctors have joint appointments at U of M does not mean the converse, that all U of M doctors *necessarily* have VA appointments.  Nor does the statement suggest that Ebrahim held himself out as a VA employee, much less as a chief doctor who maintained an office there.  *See contra Gamble*, 648 F. Supp. at 441.  The record is void of any indication that Ebrahim or Defendant misled Plaintiff about their employment relationship or lack thereof.  Accordingly, estoppel in this case would be improper.

## IV.  CONCLUSION

IT IS ORDERED that the caption is AMENDED to substitute Defendant United States of America for Defendant Department of Veterans Affairs.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss [Dkt #14] is GRANTED.  The court lacks subject matter jurisdiction.

  S/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  June 26, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 26, 2007, by electronic and/or ordinary mail.

  S/Lisa Wagner  
Case Manager and Deputy Clerk  
(313) 234-5522